http://www.va.gov/vetapp16/Files5/1639944.txt

Citation Nr: 1639944 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10-43 296 ) 
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUE

Entitlement to a rating in excess of 40 percent for degenerative disc disease, L5-S1.

REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

M. Coyne, Associate Counsel

INTRODUCTION

The Veteran completed active duty service from April 1979 to February 1987.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which reduced the Veteran's disability evaluation for a low back disability from 40 percent to 10 percent, effective April 1
2009. This reduction was made subsequent to the Veteran filing a claim for an increased evaluation in April 2008. A January 2015 rating decision later assigned the Veteran a reduced rating of 20 percent from April 1, 2009 to October 3, 2014, and 40 percent from October 4, 2014 onward. However, in a May 2016 Board decision, the Board found that the earlier rating reduction was improper and restored the Veteran's rating to 40 percent. On this basis, the Board has characterized the Veteran's appeal as one of entitlement to a rating in excess of 40 percent.

This case was remanded to the Agency of Original Jurisdiction (AOJ) for completion of additional claim development in March 2014 and May 2016, and has now been returned to the Board for further adjudication. 

Additionally, the Board further notes that the Veteran testified before a Decision Review Officer (DRO) at the St. Petersburg RO in November 2008 and before the undersigned Veterans Law Judge in December 2013 at a Travel Board hearing. A transcript of each hearing has been associated with the claims file.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. The Board has also considered documentation included in the Virtual VA system in reaching the determination below. Accordingly, any future consideration of this case should take into consideration the existence of these electronic records.

FINDING OF FACT

At worst, the Veteran's thoracolumbar spine limitation of motion was manifested by 20 degrees of forward flexion with pain at 0 degrees, 5 degrees of extension with pain at 0 degrees, lateral flexion of 10 degrees bilaterally with pain at 0 degrees, and lateral rotation of 10 degrees with pain at 0 degrees, functional loss after repetition in the form of weakened movement and pain on movement, and incapacitating episodes of at least one week but less than two weeks total duration over the course of a 12 month period.

CONCLUSION OF LAW

The criteria for an initial rating in excess of 40 percent for degenerative disc disease, L5-S1 have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-14, 4.40, 4.45, 4.59, 4.71(a), Diagnostic Code 5242 (2015). 

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations VA's has a duty to notify and assist the claimant in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Here, VA has met all statutory and regulatory notice provisions set forth in the VCAA. Prior to initial adjudication, a May 2012 letter satisfied VA's duty to notify the Veteran of the elements of his claim. 

Additionally, part of VA's duty to assist includes the procurement of, or the provision of assistance to the claimant in the procurement of service treatment records and other pertinent treatment records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Here, the Veteran's service treatment records, VA treatment records, and relevant, identified private treatment records have been collected. 

Moreover, according to McLendon v. Nicholson, when required to adjudicate the claim, VA must provide a medical examination assessing the Veteran's claimed disabilities or conditions. See generally 20 Vet. App. 79 (2006). Such a medical examination is adequate when it describes the disability in sufficient detail such that the examiner's evaluation of the disability is "fully informed." Barr v. Nicholson, 21 Vet App. 303, 311 (2007). 

In August 2008 and October 2014, VA conducted examinations of the Veteran assessing the severity of his low back disability. The October 2014 VA examination was based on a thorough examination that included the Veteran's statements, a description of the Veteran's pertinent medical history, a complete review of the claims file, and conclusions and observations that are responsive to the rating criteria for low back disabilities. On these bases, the Board finds this examination reports reflects the current severity of the Veteran's low back symptoms and, thus is adequate to determine the rating warranted for this disability. In so finding, the Board acknowledges the recent holding of the United States Court of Appeals for Veterans Claims (the Court) in Correia v. McDonald, 28 Vet. App. 158 (2016), in which the Court indicated that for certain joints, "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with the range of the opposite undamaged joint." See 38 C.F.R. § 4.59. On this basis, the Court held that where possible, such range of motion testing should be used to assess painful motion. See generally Correia, 28 Vet. App. 158. However, as discussed in more detail below, because the Veteran is already receiving the highest disability compensation rating of 40 percent based on range of motion, and a rating in excess of this rating is predicated on other objective medical factors other than range of motion, such as the presence of ankylosis, the Board finds that the range of motion testing included in the October 2014 VA examination was sufficient for rating purposes, and accordingly, no further range of motion testing is required.

However, with regard to the August 2008 VA examination, the Board finds that this examination was not adequate for rating purposes for the same reasons it previously found it to be inadequate for the purposes of reducing the Veteran's disability compensation rating in its previous March 2016 Board decision. Specifically, the Board notes that the August 2008 VA examination report does not include specific findings as to the degree of loss of function due to pain, fatigability, weakness, lack of endurance, or incoordination, despite the fact that the Veteran reported radiating pain. Additionally, at the December 2013 Board hearing the Veteran stated that the August 2008 examiner failed to use a goniometer to measure his range of motion, and the August 2008 examination report is silent as to whether a goniometer was used. At the same hearing the Veteran also indicated that the examiner physically turned him beyond the point at which it was painful for him in range of motion testing, and that she did not listen to him when he indicated to her that he was in pain. Finally, a November 2008 private medical report shows that after reviewing the available clinical information on the Veteran, the examiner concluded that the Veteran was relatively close to requiring a posterior lumbar fusion because his disc spaces appeared to be totally collapsed. He stated further that with respect to the Veteran's disability situation, he found it medically improbable for the Veteran to have recovered as completely as was implied in the VA examination. He stated that in other words, the clinical history, physical examination findings as noted in his previous note and MRI findings were supportive of the evidence that the Veteran had significant and progressive disc disease of the L5-S1 level and therefore cast a shadow of doubt in regards to the reported "normal" range of motion that was noted by the August 2008 VA examiner. He believed that the Veteran actually had more disability at this point than he had 5 or 10 years prior and it would unfortunately continue to increase in time. This was supported by range of motion testing and straight leg raise testing for radiculopathy that conflicts with the findings of the August 2008 VA examination. Given the foregoing, the Board finds that the August 2008 VA examination report is not adequate for rating purposes.

Additionally, the Board must also determine whether the AOJ has substantially complied with the remand directives contained in past remand decisions. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). As discussed above, the issue was remanded to the AOJ for additional development in March 2014. That remand decision directed the AOJ to do the following: (1) obtain any outstanding treatment records; (2) and schedule the Veteran for a new examination. Further, this new examination was to: (1) include range of motion measurements in degrees as captured by a goniometer, and any additional range of motion attributable to functional loss such as pain on use and during flare-ups, weakened movement, excess fatigability, incoordination, and repetitive use; (2) use repetitive motion testing, with measurements in degrees for any decreases in range of motion after repeated use; (3) include a description of all present neurological manifestations to include radiculopathy; and (4) report the frequency and severity of any incapacitating episodes. Subsequently, the March 2016 remand decision remanded this claim to the AOJ for the collection of outstanding treatment records. As already discussed, all of this development was completed, and the October 2014 VA examination substantially complied with the March 2014 directives.

Additionally, as noted above, the Veteran testified at a hearing before the undersigned in December 2013. Here, the December 2013 hearing focused on the elements necessary to substantiate the Veteran's claim, and his testimony and the statements of his representative demonstrates that he had actual knowledge of the elements necessary to substantiate his claim. See Bryant v. Shinseki, 23 Vet. App. 488 (2010); see also Procopio v. Shinseki, 26 Vet. App. 76 (2012). Therefore, the Board has met its duty to assist pursuant to Bryant, as well as all other duties to notify and assist as described above.

Finally, as there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Shinseki v. Sanders, 556 U. S. 396, 129 S. Ct. 1696 (2009).

II. Standards Governing Evidentiary Analysis

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Additionally, if the positive evidence supporting a claim and the negative evidence indicating a denial of the claim is relatively equal, the Veteran is entitled to the benefit of the doubt. See 38 U.S.C.A. §5107(b); 38 C.F.R. §§ 3.102, 4.3. Accordingly, after careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. See id.

Moreover, to adjudicate a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). The third step of this inquiry requires the Board to weigh the probative value of the evidence in light of the entirety of the record. 

Below Part III outlines the legal criteria that apply to claims for increased ratings, and in particular to back conditions, and applies the aforementioned evidentiary principles to the record of this case. 

III. General Rules for Adjudicating Increased Rating Claims

Disability evaluations are determined by comparing a veteran's present symptoms with the criteria set forth in the VA's Schedule for Rating Disabilities (rating schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. Furthermore, when it is not possible to separate the effects of the service-connected disability from a non-service-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). Moreover, staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007) (citing Fenderson v. West, 12 Vet. App. 119, 126 (1999)). 

Additionally, the Board has a duty to consider all claims reasonably raised by the record and to assign the diagnostic code most favorable to the Veteran, and accordingly must consider all relevant diagnostic codes, not just the diagnostic code currently assigned to the Veteran. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994); Fanning v. Brown, 4 Vet. App. 225, 228 (1993). 

Below Part A discusses the criteria of various ratings to low back disabilities, and their application to the Veteran's low back disability, while Part B discusses extraschedular considerations for the Veteran's low back disability, and Part C explains why consideration of entitlement to a total disability rating (TDIU) as part of the Veteran's appeal is not appropriate here. 

A. Schedular Rating for Low Back Disability

The Veteran's back disability is evaluated under Diagnostic Code 5243, for intervertebral disc syndrome with a 40 percent disability compensation rating. 38 C.F.R. § 4.71a. Because the Veteran's disability is musculoskeletal, this evaluation must account for considerations such as pain and functional loss pursuant to §§ 4.40, 4.45, and 4.59. 

Under the rating schedule titled General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula), different rating percentages are assigned based on: (1) forward flexion; (2) combined range of motion; (3) ankylosis; (4) muscle spasm or guarding; and (5) localized tenderness. See generally id. Flexion is defined as "the act of bending or condition of being bent." Dorland's Illustrated Medical Dictionary, 717 (32nd ed. 2012). Combined range of motion refers to the sum of the Veteran's forward flexion, extension, left and right lateral flexion, and left and right rotation. 38 C.F.R. § 4.71a, at General Rating Formula, Note 2. Extension is defined as "the movement that straightens or increases the angle between the parts of the body." Dorland's Illustrated Medical Dictionary, 662 (32nd ed. 2012). For VA purposes, forward flexion to 90 degrees, and extension, lateral flexion, and rotation to 30 degrees, are each considered normal range of motion of the thoracolumbar spine. 38 C.F.R. § 4.71, Plate V. 

For the thoracolumbar spine, a 10 percent evaluation is appropriate if the forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; or, the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or, there is muscle spasm or guarding, or localized tenderness that is not severe enough to result in an abnormal gait or abnormal spinal contour, or vertebral body fracture with loss of 50 percent or more of height. 38 C.F.R. § 4.71(a). A 20 percent evaluation is warranted when the forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or, there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. A 40 percent rating requires forward flexion of the thoracolumbar spine limited to 30 degrees or less; or unfavorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent rating requires unfavorable ankylosis of the entire thoracolumbar spine, while a 100 percent rating requires unfavorable ankylosis of the entire spine. Id. Other criteria apply to injuries of the cervical spine; however, the Veteran's cervical spine is not at issue in this case. See id.

The above criteria are to be applied with or without symptoms of pain (whether or not it radiates), aching, or stiffness in the area of the spine involved. 38 C.F.R. § 4.71a. Any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment are to be evaluated separately under an appropriate Diagnostic Code. Id. at General Rating Formula, Note 1. Radiculopathy, which is defined as "disease of the nerve roots" that can cause lower back pain and sciatica, is considered a neurological abnormality. Cf. Dorland's Illustrated Medical Dictionary, 1571 (32nd ed. 2012). 

Radiculopathy is rated under 8520, on the basis of complete or incomplete paralysis of the sciatic nerve, or neuritis or neuralgia of the sciatic nerve. 38 C.F.R. § 4.124a. The Veteran has established service connection for radiculopathy of the right and left lower extremities and separate 20 percent ratings have been assigned. The ratings assigned those disabilities are not before the Board at this time. 

Additionally, one of the potentially applicable diagnostic codes the Board must consider, 5243, for intervertebral disc syndrome, must also be evaluated under the rating schedule titled the Formula for Intervertebral Disc Syndrome Based on Incapacitating Episodes (Intervertebral Disc Syndrome Formula). Id. at Note 6. 

Under the Intervertebral Disc Syndrome Rating Formula, the Veteran must have incapacitating episodes as a result of intervertebral disc syndrome. See 38 C.F.R. § 4.71a. For VA purposes an incapacitating episode refers to a "period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." Id. at Intervertebral Disc Syndrome Formula, Note 1. Incapacitating episodes with a total duration of at one week but less than 2 weeks during the past 12 months are assigned a 10 percent rating. 38 C.F.R. § 4.71a. Incapacitating episodes with a total duration of at least two weeks but less than 4 weeks during the past 12 months are assigned a 20 percent rating. Id. Incapacitating episodes with a total duration of at least 4 weeks but less than 6 weeks during the past 12 months are assigned a 40 percent rating. Id. Finally, a 60 percent rating requires incapacitating episodes having a total duration of at least 6 weeks during the past 12 months.

As for pain and functional loss of the lower back, the Veteran is entitled to at least the minimum compensable evaluation if motion is accompanied by pain. See 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1 (2011). However, the Veteran is already rated in excess of 10 percent for his back disability, which is the minimum compensable rating. This fact notwithstanding, pain is also relevant to a disability evaluation in excess of the minimum compensable rating if that pain results in demonstrated functional impairment. Because pain itself does not constitute functional loss, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 37-38 (2011); see 38 C.F.R. § § 4.40, 4.45 (2015). Joint pain alone, without evidence of decreased functional ability, does not warrant a higher rating. See generally Mitchell, 25 Vet. App. 32.

Likewise, the Board must also consider any additional functional loss the Veteran may have sustained by virtue of other factors as described in 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Such factors include more or less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, and deformity or atrophy from disuse. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the Veteran. 38 C.F.R. § 4.40; Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

1. Evidence

By way of history, the Veteran was initially service connected for his low back condition in December 2006 with an effective date of June 9, 2006. At that time he was assigned a 40 percent rating. Although, as discussed above, the AOJ later attempted to reduce the Veteran's rating, the Board restored the Veteran's rating to 40 percent in a March 2016 Board decision. The Veteran was also later granted two separate 20 percent ratings for bilateral lower extremity lumbar radiculopathy in a January 2015 decision.

Beginning with the Veteran's lay statements, when the Veteran filed his initial application in April 2008 for an increased low back disability compensation rating, he indicated that his back condition had worsened. The Veteran later testified at a November 2008 DRO hearing that his back pain was constant and that it slowed him down, that he could not sit up straight all the time that he had to constantly shift around in his seat due to back pain, and that he could not properly exercise because he could not walk for prolonged periods of time or lift weights. The Veteran further explained that when he walked he had pain radiating that extended down his left buttocks, that his buttock was usually numb, and that it often felt like there were spikes going down into his legs. The Veteran also testified that he sometimes had pain in the middle of his back as well. He also indicated that he had pain reaching over head and tying his shoes, that he did not carry anything over 20 lbs., that he could not stoop without pain, and that, due to his back, he only worked with tools like pliers and screwdrivers. The Veteran explained that he was at that time employed as an alarm installer, and that he mounted alarms on walls rather than ceilings, moving slowly and carefully. He further explained that his pain was an 8 on a 10 point scale, and that he was currently taking Naproxen pain killers and using Icy Hot. As for further impact on his activities of daily living, he indicated that he could only play with his two-and-a-half year old daughter in a very limited way, that his condition affected his sex life, and that he sometimes felt urinary urgency.

At the Veteran's second hearing on this matter in December 2013, this time before the undersigned Veterans Law Judge, the Veteran again indicated that he had a back condition from 1979 onwards and that it had gotten progressively worse. He also reported that he experienced periods of time when his back was out, which he identified as incapacitating episodes. Although the Veteran would rest during this time, he later explained that this bed rest was not prescribed by a doctor, and that he did it on his own. He explained that when his back went out he was in bed for days and that it happened every few months or so; at that time, the Veteran said this had occurred four times in the previous twelve months. The Veteran reported constant pain at an 8 out of a 10 point scale, and reported weakness and stiffness, fatiguing easily, use of cane for prolonged standing, and back pain after prolonged walking and sitting. He reported that he was not receiving physical therapy and that he took Tramadol and Naproxen but that the medications did not really work. He also indicated that he experienced limitation of motion and radiculopathy symptoms throughout the appeal period, but his back pain in 2008 was not necessarily worse than it was in 2006. The Veteran also explained that he currently worked as a dispatcher, which involved paperwork and answering the phone; he started that job to avoid bending and lifting limitations caused by his back issues. He further indicated that his low back condition affected his personal life, specifically his sex life, ability to perform normal chores, and play, skateboard, or ride a bicycle with his 7 year old.

A review of the Veteran's relevant VA treatment records during the appeal period reveal that the Veteran has been consistently diagnosed with back pain and degenerative disc disease. An October 2007 magnetic resonance imaging (MRI) of the Veteran's lumbar spine revealed narrowing and desiccation of the L5/S1intervertebral disc associated with a small midline posterior disc herniation, with moderate stenosis on the left L5/S1. An October 2008 treatment record indicates that the Veteran reported lower back pain of 7.5 or 8 out of a 10 point scale, but no radiating pain. The Veteran reported that he was receiving lower back massages from family members with no relief, and that he was unable to do long walking, and had not had any physical therapy training. A January 2011 MRI of the Veteran's lumbar spine did not reveal any significant changes with the October 2007 MRI results. This MRI revealed advanced degenerative disc disease at L5-S1 with severe disc height loss and anterior osteophyte formation, and mild concentric disc bulge resulting in mild-to-moderate bilateral neural foramina stenosis with disc material touching, but this did not appear to be compressing his L5 nerve roots. In December 2011 the Veteran indicated that he did not want to be prescribed a physical therapy program for his back because he felt that it had given him a hernia. The Veteran reported worsening back pain in March 2012 since his prior MRI, and another MRI was completed. Again this March 2012 MRI revealed no interval change since the previous January 2011 MRI, and again, found advanced degenerative disc disease at L5-S1with severe disc height loss, mild chronic fatty endplate discogenic changes, and anterior osteophyte formation. In April 2012 the Veteran again reported pain at a 7 or 8 out of a 10 point scale, with pain in the lower spine radiating to his bilateral posterior thighs

Additionally, the Veteran was formally diagnosed with radiculopathy by VA in November 2012, after completion of an electromyography (EMG). This EMG revealed electro-diagnostic evidence of a L5 radiculopathy with a superimposed poly-motor neuropathy, and nerve abnormalities were noted bilaterally. The Veteran started to report radicular pain as far back as January 2011, at which time a physical therapist noted a complaint of low back radiation down the Veteran's bilateral lower extremities with a discomfort level of an 8 out of a 10 point scale, but prior to this the Veteran had reported numbness in his left buttocks in connection with his back pain as early as July 2009. However, a January 2011 and March 2012 MRI results did not reveal nerve root impingement, and October 2008 straight-leg raise testing was negative for radiculopathy. The Veteran has consistently denied incontinence, and an April 2012 renal and bladder ultrasound did not reveal any abnormalities. Prior to this, in February 2012 the Veteran reported radiating pain in his lower extremities bilaterally, and paresthesias to the anterior thigh, with no loss of bowel or bladder function, and later in April 2012 the Veteran reported transient numbness and weakness in the lower extremities with pain in his lower spine radiating to his bilateral posterior thighs, causing him to use a cane to ambulate.

As for the Veteran's relevant private medical records, a November 2008 letter from Dr. L.Z. with supporting medical records reiterates that the Veteran has chronic degenerative disease affecting mainly the L5 S1 disc level. Dr. L.Z. noted that the Veteran's disc space appeared to be totally collapsed. Reviewing the history of the Veteran's low back injury in service in 1979, Dr. L.Z. concluded that the Veteran "actually does in fact have probably more disability at this point than he had five or ten years ago and unfortunately this will continue to increase in time." Observations by Dr. L.Z. in November 2008 revealed no muscle atrophy, and a slow and slightly wide gait with no obvious limp. Straight leg testing was mildly positive bilaterally, more pronounced on the left than the right lower extremity. Range of motion testing revealed flexion ending at 60 degrees with pain to the extreme range of motion, extension ending at 20 degrees also with pain to the extreme range of motion, and limited right lateral rotation and left lateral rotation ending at 20 degrees. Moderate paravertebral spasm upon light touch was noted as well. Additionally, a November 2013 letter by Dr. G.Y. and supporting MRI revealed narrowing and desiccation of the L4 to L5 vertebrae, with sided disc protrusion and spinal stenosis, and narrowing of the neural foramina at the L5-S1. Dr. G.Y. expressed his opinion that the Veteran would continue to have radicular pain and restricted mobility for the rest of his life, and that the his October 2013 MRI results did not reveal any change in the L5-S1 broad based disc protrusion of bilateral neural foramina issues. Dr. G.Y. further notes that the Veteran's radicular pain was constant in his back and that he experienced related numbness in his thighs.

Finally, an October 2014 VA examination report confirmed the Veteran's previous diagnosis of intervertebral disc syndrome. At this examination, the Veteran reported flare-ups in the form of severe pain when he overstretched, and worsening back pain. Range of motion testing revealed that: (1) the Veteran's forward flexion ended at 20 degrees rather than 90 degrees, with objective evidence of painful motion at 0 degrees; (2) the Veteran's extension ended at 5 degrees rather than 30 degrees, with painful motion at 0 degrees; (3) the Veteran's lateral flexion ended at 10 degrees bilaterally instead of 30 degrees, with painful motion at 0 degrees; and (4) the Veteran's lateral rotation ended at 10 degrees bilaterally instead of 30 degrees, with painful motion at 0 degrees. After three repetitions the Veteran did not have any additional limitation in range of motion, but the examiner noted functional loss and impairment after repetitive use as manifested by weakened movement, and pain on movement. By comparison the Veteran active range of motion testing at his October 2006 VA examination that initially established the Veteran's current 40 percent rating revealed forward flexion ending at 80 degrees, with pain at 45 degrees, extension ending at 30 degrees, with pain at 10 degrees, right lateral flexion ending at 30 degrees, with pain at 15 degrees, left lateral flexion ending at 30 degrees, with pain at 20 degrees, and lateral rotation bilaterally ending at 30 degrees, with pain at 20 degrees.

Additionally, in the October 2014 VA examination report the Veteran was noted to exhibit muscle spasm and guarding of the thoracolumbar spine resulting in abnormal gait or abnormal spinal contour, and to have slightly diminished muscle strength, which exhibited palpable or visible muscle contraction but no joint movement. The Veteran had normal reflexes in the lower extremities, but decreased responsiveness to light touch at the thighs and knees. Straight leg raise testing was positive for radiculopathy in both lower extremities, and the Veteran was noted to exhibit severe pain of the lower extremities bilaterally with moderate paresthesias and numbness bilaterally. The sciatic nerve root was identified as the sources of this radicular pain, and the examiner determined that the overall severity of the Veteran's radiculopathy was moderate. No ankylosis of the spine was noted, and the examiner did not find any other neurological abnormalities related to the Veteran's low back condition. The Veteran was noted to have incapacitating episodes of at least one week but less than two weeks in total duration over the course of the previous 12 months. Regular use of a brace and cane were noted, and the examiner noted that the Veteran did not have any scars related to his condition. MRI evidence of arthritis was reviewed, specifically the January 2011 MRI results. Finally, the examiner noted that due to the Veteran's condition he was limited to desk work only, but explained that the could not address the extent of the Veteran's additional functional limitations during flare-ups because he was not currently experiencing a flare-up at the time of the examination.

2. Analysis

As a preliminary matter, the Board finds that the October 2014 VA examination constitutes probative evidence for the same reasons it found that report to be adequate for rating purposes. Moreover, the Board notes this examination report is the most probative medical evidence of record because it is the most complete, recent, and thorough evaluation of the Veteran low back condition.

As discussed above the Veteran is currently rated 40 percent. As indicated above under the General Rating Formula, a 50 or 100 percent rating requires that the Veteran's lumbar spine exhibit ankylosis. The October 2014 VA examination indicated that the Veteran's lumbar spine did not exhibit ankylosis and there is no documentation of ankylosis in any of the Veteran's medical records. By way of background, ankylosis is defined as the immobility of a joint caused by disease or injury. See Dorland's Illustrated Medical Dictionary, 94 (32nd ed. 2012). Moreover, applying the Intervertebral Disc Syndrome Formula would not entitle the Veteran to a higher rating because the Veteran was only noted to have incapacitating episodes of at least one week but less than two weeks in total duration over the course of the previous 12 months at his October 2014 VA examination, and such symptoms are only consistent with a 10 percent rating. Likewise, as discussed while the record reveals that the Veteran has pain that is accompanied by arthritis, which even without any reduction in range of motion, entitles him to at least the minimum compensation rating, the Veteran is already receiving a rating in excess of 10 percent, so application of Diagnostic Code 5003 for arthritis, would not result in a higher rating as the maximum rating the Veteran's back could receive under this Diagnostic Code is 10 percent.

Addressing the Veteran's lay statements the Board finds that the Veteran's descriptions of his symptoms are competent and credible because the type of symptoms the Veteran describes do not required any special medical expertise, they are consistent, and they are corroborated by his treatment records. Likewise, the Veteran also finds that the Veteran's statements that his back pain symptoms have gotten worse are also competent and credible. However, the Board finds that a higher rating is not possible in the absence of ankylosis or more frequent incapacitating episodes, and that the current 40 percent rating criteria accounts for the Veteran's reduced range of motion and functional loss after repetition, as the range of motion codes contemplate loss in range of motion due to such symptoms as pain and functional impairment. Moreover, the record reflects that at least some of the Veteran's increased pain since 2008 can be attributed to an increase in his radiculopathy symptoms in his bilateral lower extremities, for which he is receiving separate ratings. Moreover, November 2008 and October 2006 range of motion testing contained in private treatment records and VA records suggest that while the Veteran's most recent range of motion results at the October 2014 VA examination indicate a worsening in his condition, the 40 percent rating criteria that the Veteran has maintained throughout the appeal period contemplates and adequately compensates the Veteran for his symptoms, as the Veteran's range of motion has at times exceeded the limited 30 degree forward flexion on which the 40 percent rating is predicated. Accordingly, the Board finds that a rating in excess of 40 percent for the Veteran's low back disability is not warranted here. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-14, 4.40, 4.45, 4.59, 4.71(a), Diagnostic Code 5242 (2015). 

As for the Veteran's radiculopathy, the Board notes that service connection and separate ratings are in effect for radiculopathy of the bilateral lower extremities and there is no indication of any additional neurological findings associated with the Veteran's low back for which a separate rating is in order. 

B. Extraschedular Considerations

Certain exceptional or unusual circumstances may warrant remand to refer this claim for extraschedular consideration. 38 C.F.R. § 3.321(b)(1). An exceptional case is said to include such factors as marked interference with employment or frequent periods of hospitalization. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993). However, ordinarily only the rating schedule will apply unless there are exceptional or unusual factors which would render application of it impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

There is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Thun v. Peake, 22 Vet App 111 (2008). First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate; if the schedular evaluations are inadequate, the Board proceeds to the second step. Id. At the second step, the Board must determine whether the claimant's disability picture exhibits factors described by or related to the "governing norm[s]" set forth by 38 C.F.R. § 3.321(b)(1), the regulation under which extraschedular ratings are assigned. Id. Namely, those governing norms are "marked interference with employment" or "frequent periods of hospitalization." See id. If the Veteran's disability picture exhibits these governing norms, the Board proceeds to the third step. Id. At the third and final step, the Board refers the Veteran's claim to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, the veteran's disability picture requires the assignment of an extraschedular rating. Id.

With respect to the first step of the three part inquiry set forth in Thun v. Peake, 22 Vet App 111 (2008), the evidence in this case does not show an exceptional disability picture such that the available schedular evaluation for the service-connected disability on appeal is inadequate. A comparison between the level of severity and symptoms of the Veteran's low back disability and the established criteria found in the rating schedule demonstrates that the schedular ratings for each of these disabilities reasonably describe his symptoms. Further, as indicated by 38 C.F.R. § 4.1 "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 

In so finding, the Board acknowledges the Veteran uses several assistive devices including a brace and cane due to his low back. However, the Board finds that because assistive devices do not constitute symptoms, in the absence of additional evidence use of such devices does not warrant an extraschedular rating.

Finally, the Board notes that under Johnson v. McDonald, 762 F. 3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected symptoms experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected condition. Accordingly, this case does not present an exceptional circumstance under which extraschedular consideration is required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple service-connected conditions. 

C. TDIU

A total disability rating based on individual unemployability (TDIU) is not warranted because the Veteran does not contend and the evidence does not show that his service-connected disabilities render him unemployable. Rice v. Shinseki, 22 Vet. App. 447 (2009); see also Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). To the contrary, here the record reflects that while the Veteran did at one point during the appeal period have trouble finding work, in part, due to his service-connected low back disability and radiculopathy, the Veteran since been gainfully employed as a dispatcher, as described in his December 2013 hearing testimony.

ORDER

A rating in excess of 40 percent for degenerative disc disease, L5-S1 is denied.

____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs